ACCELERATED DOCKET JOURNAL ENTRY and OPINION
This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the record from the lower court and the briefs of counsel.
Defendant-appellant Gregor H. Rigo appeals the sentences imposed by the trial court. For the reasons below, we affirm.
On February 18, 2000, Rigo, a volunteer soccer coach in Strongsville, invited one of his soccer players, a fourteen-year-old boy, to dinner. Rigo asked T[1] to participate in a scientific study. Rigo, an environmental engineer, claims to have seen a study which analyzed the effect that dioxins have on the genital development of young males whose mothers were exposed to the chemical. Rigo decided to conduct his own study of this issue.
Rigo did not tell T the nature of his study, but advised him that he was sending his results to Congress. T agreed to participate in the study. After dinner, Rigo took T to his office, and asked T if he could take some measurements of his body. Rigo measured each body part five times, each time writing the measurements onto a piece of paper.
Rigo then asked T if he could measure his testicles. At first T was reluctant, but was persuaded by Rigo who assured him that it would help with the experiment. Rigo provided T with a pair of green shorts, and instructed T to remove his underwear and then put on the shorts. Rigo measured T's penis and then he measured T's testicles with a caliper. Rigo requested that T bend over so that he could measure his anus. Claiming that he was unable to get a proper measurement in this position, Rigo asked T to place his chest on the floor and push his bottom upward so that Rigo could measure T's anus with a tape measure. After the incident, Rigo gave T $60 and told him not to tell anyone about the measurements. While driving T home, Rigo stated that he would like to measure T again on February 21, 2000.
On February 21, 2000, T and his father reported the incident to the Berea Police. The police instructed T to call Rigo and ask him questions. Rigo's responses corroborated T's story.
Rigo was arrested and questioned by the police. This interview revealed that Rigo had also measured another boy, W, whom Rigo had also coached in soccer.
W advised police that in mid-1997, Rigo had measured him at his office. In addition to other body parts, Rigo had also measured W's penis and testicles. After completing the measurements he gave W $100 and told him not to tell anyone. Approximately two years later, W was working in Rigo's home. While alone with Rigo, Rigo grabbed W in a bear hug and attempted to put his hands down W's pants. W stated that he elbowed and punched Rigo, ending the encounter. W also advised police that Rigo provided him with gifts and an Internet account.
On February 22, 2000, the police conducted a search of Rigo's office and found a pair of green shorts, a caliper, a tape measure and written measurements. In addition, pictures of young nude males engaging in sexual acts were discovered. These pictures had been downloaded from the Internet.
On February 23, 2000, police conducted a search of Rigo's home and found pornographic images of children on Rigo's computer, including photos, movie clips and audio files.
Rigo first maintained that the child pornography was linked to his scientific study. In later interviews, however, he admitted that he was motivated to conduct the scientific study by his erotic interests. Rigo's psychologist testified that Rigo was in denial, and believed that he was truly conducting a scientific experiment.
Rigo was indicted on two counts of kidnapping; two counts of gross sexual imposition, a fourth degree felony (counts 2 and 4); one count of attempted gross sexual imposition; twenty-three counts of pandering sexually-oriented matter involving a minor, a fifth degree felony (counts 20, 22, and 28); and one count of possession of criminal tools, a fifth degree felony (count 30).
On August 21, 2000, Rigo pled guilty to counts 2, 4, 20, 22, 28 and 30. On September 25, 2000, the trial court sentenced Rigo to the maximum sentence of eighteen months on both counts 2 and 4, to run consecutively. On counts 20, 22, 28 and 30, Rigo was sentenced to the minimum sentence of six months on each count, to run concurrently to each other, and consecutively to the sentence on counts 2 and 4. In total, the sentence included forty-two months of incarceration.
On October 25, 2000, Rigo filed a notice of appeal. On November 11, 2000, Rigo filed a motion for judicial release with the trial court. On December 15, 2000, the trial court denied Rigo's motion at this time.[2]
On May 4, 2001, after a hearing, the court granted the motion, and sentenced Rigo to five years of community controlled sanctions. Pursuant to R.C. 2929.20, if Rigo violates the sanction, the trial court reserves the right to reimpose the original sentence. Thus, whether the trial court erred in imposing the original sentence is at issue.
Appellant raises the following assignments of error:
 I. THE TRIAL COURT ERRED BY IMPOSING MORE THAN THE MINIMUM SENTENCE FOR COUNTS 2 AND 4.
 II. THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM SENTENCE FOR COUNTS 2 AND 4.
 III. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES FOR COUNTS 2 AND 4 AND BY IMPOSING THE SENTENCES ON COUNTS 20, 22, 28 AND 30 CONSECUTIVE TO THE SENTENCES ON COUNTS 2 AND 4.
Rigo maintains that the trial court's sentencing decision failed to meet the statutory requirements for imposing more than the minimum sentence for an offender who has not previously served prison time, for imposing the maximum sentence for gross sexual imposition, and for imposing consecutive sentences.
Rigo's appeal of his sentence is brought pursuant to R.C. 2953.08 which provides:
 (G)(1) If the sentencing court was required to make the findings required by division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, * * * of the Revised Code relative to the imposition * * * of the sentence, and if the sentencing court failed to state the required findings on the record, the court hearing an appeal under division (A), (B), or (C) of this section shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings.
 (2) * * * The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. * * * The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, * * * of the Revised Code, whichever, if any, is relevant * * *.
Applying a clear and convincing standard in reviewing Rigo's sentences, we conclude that the trial court followed the mandates of R.C. 2929.14 and 2929.19, specifically as these statutes refer to the imposition of more than a minimum sentence, maximum sentences and consecutive terms.
R.C. 2929.14(B), R.C. 2929.14(C) and R.C. 2919.14(E)(4) establish the public policy disfavoring prison terms that are greater than the minimum for first time offenders, and maximum or consecutive sentences except for the most deserving offenders. See, State v. Edmonson (1999),86 Ohio St.3d 324, 328, 715 N.E.2d 131, 135; State v. Gonzales (Mar. 15, 2001), Cuyahoga App. No. 77338, unreported.
The other statute at issue, R.C. 2929.19(B)(2)(a),(d) and (e), sets forth the procedure that a trial court must follow when imposing a prison term for a fourth or fifth degree felony, consecutive sentences for multiple offenses and maximum sentences. See R.C. 2929.19; Edmonson,86 Ohio St.3d at 328, 715 N.E.2d at 135; Gonzales, supra.
Prison term on fourth and fifth degree felonies
Before the court can impose a prison term for a fourth or fifth degree felony, it must give its reasons for imposing the prison term, based upon the overriding purposes and principles of felony sentencing set forth in section R.C. 2929.11, and any factors listed in division (B)(1)(a) to (h) of section 2929.13 that it found to apply relative to the offender.
Here, the court found that section (B)(1)(d) of R.C. 2929.13 applied. This section states as follows:
 (d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
The court stated that as a soccer coach Rigo was in a position of trust, and used that position to violate the victims. Thus, the trial court did not err in imposing prison sentences for the fourth and fifth degree felonies.
Greater than minimum term
In regard to imposing more than the minimum upon a first-time offender, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted a longer sentence. R.C.2929.14(B) does not require that the trial court give its reasons for its [statutory] findings. Edmonson 86 Ohio St.3d at 326.
R.C. 2929.14(B), reads as follows:
 (B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
Prior to sentencing, the trial court recited generally the factors to be considered in sentencing, and in doing so, recited one of the R.C.2929.14(B) factors, stating that:
 In attempting to achieve the overriding purposes for felony sentencing, the Court has to be mindful that the sentencing be commensurate with the offender's conduct and that the sentence not demean the seriousness of the offender's conduct.
The trial court recited this language, but it never concluded that a minimum sentence in this case would demean the seriousness of Rigo's conduct.
The trial court did consider the recidivism component of R.C.2929.14(B), stating that:
 The need for deterring the offender from future crime. I find that is great.
The trial court then explained that based on Megan's law, these types of offenders have a high rate of recidivism. Also, the court noted that Rigo lacked remorse, as determined by the probation officer who prepared the presentence investigation report.[3] The presentence investigation report checklist states that Rigo's lack of remorse supported a finding that recidivism is likely. The court also noted that these incidents took place at two separate times, with two different boys, over a two-year period.
Although the language used by the trial court did not specifically state that a shorter term will not adequately protect the public from future crime by [Rigo] * * *, it implies that he made that finding as required by R.C. 2929.14(B). Further, in the journal entry the court states that Sentences between cts 2 4 and the constellation of cts (20, 22, 28, 30) are necessary to protect the public from future crime * * *. Thus, the trial court's finding that Rigo presents a risk of committing the same kind of crime in the future supports the court's decision to sentence Rigo to more than the minimum prison term. State v. McKinley (June 22, 2000), Cuyahoga App. No. 76443, unreported.
Therefore, the trial court did not err in imposing more than the minimum sentence on Rigo.
Consecutive Sentences R.C. 2929.14(E)(4) sets forth the factors for imposition of consecutive or multiple prison terms.
R.C. 2929.14(E)(4), in pertinent part provides:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *.
Further, the trial court is required to find that the offender's behavior fits into one of the categories listed in R.C.2929.14(E)(4)(a)(b)(c). Once the trial court has made a category finding, the trial court must give its reason for imposing consecutive terms. R.C. 2929.19(B)(2)(c).
Here, in imposing consecutive sentences, the trial court recited the statutory language set forth in R.C. 2929.14(E), and made a category finding under R.C. 2929.14(E)(4)(b), which states:
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
The trial court then stated that he was imposing consecutive sentences because the nature of the offense caused the victims depicted in the pornographic pictures that Rigo had downloaded to be violated again and again by the dissemination of these photos and films. He further stated that he made these findings in the context of all these reports that I've read, all these scientific reports, all of these other studies that have been provided by the State and the defense. Therefore, it can be construed that the trial court set forth its reasons for making the category finding above by incorporating the material that he previously discussed in detail on the record in his analysis under R.C. 2929.14(C). During the discussion of R.C. 2929.14(C), the trial court found Rigo's acts to be the worst form of the offense, and, as noted below, gave specific reasons for his findings.
Maximum sentence
Rigo disputes that the trial court complied with the statutory sentencing requirements in imposing the longest terms allowed on both counts of gross sexual imposition. However, the court made a category finding under R.C. 2929.14(C), and gave its reasons under R.C. 2929.19(B)(2)(d) for imposing the longest term.
R.C. 2929.14(C) provides:
 The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *.
The trial court made the requisite category finding by stating on the record that Rigo committed the worst form of the offense of gross sexual imposition, and further found that Rigo poses the greatest likelihood of committing future crimes.
In addition to the required category finding under R.C. 2929.14(C), the sentencing judge must provide for the record the reasons for said category finding. See Edmonson, 86 Ohio St.3d at 326, 715 N.E.2d at 134; Gonzales, supra. Reasons should mean the trial court's basis for its findings. Gonzalez.
Here, the trial court stated that the reasons for its finding that this was the worse form of the offense was the deceitful and fraudulent nature of the acts and Rigo's breach of ethics by committing the acts under the guise of a scientific experiment. Further, the court noted that Rigo's offenses were despicable due to the fact that Rigo is a Ph.D., and in a position of trust, and that his acts involved young people who remain adversely affected well after these incidents have taken place.
Therefore, the trial court followed the statutory mandates in sentencing Rigo to maximum terms on the gross sexual imposition counts.
Based on the foregoing, we find that Rigo's assignments of error lack merit. Accordingly, the decision of the trial court is affirmed.
It is ordered that appellant recover of appellee its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________________ COLLEEN CONWAY COONEY, JUDGE:
JAMES D. SWEENEY, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] Court policy requires that we avoid naming victims of sexual assaults whenever possible.
[2] No subsequent motion was filed, but the hearing on the motion was continued even though it had already been denied.
[3] However, there was evidence of remorse at the sentencing hearing. For instance, the psychologist who had been counseling Rigo from the date of the incident testified on behalf of Rigo. She stated that she had been chipping away at Rigo's denial, and that he is a man who feels very badly about what happened.
At the hearing, Rigo stated that he couldn't feel worse about what [he] did to the boys. * * * I feel especially bad about the teasing and verbal abuse suffered by the boys who played soccer for me or worked with me, at their schools, as the result of my action.